50 P.3d 1051

**Mary–Claude MARGAIRAZ, fka Mary–Claude Siegel, Plaintiff–Respondent,**

v.

**Shelly Martin SIEGEL, Defendant–Appellant.**

No. 27280.

Court of Appeals of Idaho.

June 24, 2002.

Liesche, Reagan, Wallace & Wallace, P.A., Coeur d'Alene, for appellant.

Kenneth P. Adler, Sandpoint, for respondent.

LANSING, Judge.

This is an appeal from an order increasing the child support obligation of appellant Shelly Martin Siegel ("Siegel"). The child support modification was based, in part, upon the magistrate's finding that Siegel was intentionally underemployed and that his potential income was substantially greater than his claimed actual income. On this appeal, Siegel contends that the magistrate's finding of his potential earning capacity is not supported by the evidence and that the support modification order therefore represents an abuse of the magistrate's discretion.

## FACTUAL AND PROCEDURAL BACKGROUND

Siegel and Mary–Claude Margairaz were married in 1986. At the time of their marriage they lived in California, where Siegel was working in the computer industry. Two children were born of the marriage. In October 1995, the couple moved from California to Sandpoint, Idaho. In March 1996, they separated, and on April 10, 1996, a decree of divorce was entered pursuant to stipulation. Margairaz and Siegel were granted joint custody of the children, and Siegel was required to pay $600 in child support, $1,300 in temporary maintenance, and $91.50 in health club dues for the children. These amounts were based on Siegel's $60,000 income and the joint custody scheme.

In December 1998, Margairaz filed a motion to increase Siegel's child support based upon changes in the parties' incomes and upon an alteration in the custody arrangement that caused Margairaz to have physical custody a larger part of the time. In response to the motion, Siegel asserted that his yearly income had decreased since the original order of support and that his support obligation therefore should be reduced.

In July 1999, an evidentiary hearing was conducted at which the magistrate received

testimony from numerous witnesses regarding the earning capacities of the two parties. It was Siegel's position that his earnings level was $35,600 per year, the salary that he drew from a corporation by which he was employed. Margairaz sought to show that Siegel was voluntarily underemployed and that his earning potential was far greater than his then-existing salary. After hearing the evidence, the magistrate found that Siegel "clearly has a potential income in the computer industry that he is not currently obtaining," and his "potential in the industry is limited only by his own lack of motivation." The magistrate determined that Siegel was underemployed, pursuant to section 6(c)(1) of the Idaho Child Support Guidelines (I.C.S.G.), and imputed to him potential earned income of $99,000 per year. Utilizing that imputed income, and taking into account Margairaz's earnings, the magistrate increased Siegel's child support payments to $1,477 per month. Siegel appealed the magistrate's decision to the district court, which affirmed. He now further appeals, arguing that the magistrate's determination of his potential income is not supported by the evidence and that the modification of the child support amount therefore constitutes an abuse of the magistrate's discretion.

## ANALYSIS

### A. Child Support Modification

Section 6(c) of the I.C.S.G. authorizes a court to impute income to a parent if the parent is voluntarily unemployed or underemployed.[1] In determining a parent's potential earned income, the court is to take into account "the parent's work history, occupational qualifications, and prevailing job opportunities and earnings levels in the community." I.C.S.G. § 6(c)(1)(A).

An order of child support may be modified "only upon a showing of a substantial and material change of circumstances" occurring since the last order addressing child support. Idaho Code § 32–709; *see also Noble v. Fisher*, 126 Idaho 885, 888, 894 P.2d 118, 121 (1995); *Rohr v. Rohr*, 126 Idaho 1, 3, 878 P.2d 175, 177 (Ct.App.1994). A magistrate court's decision to modify child support will be set aside only for an abuse of discretion. *Noble*, 126 Idaho at 888, 894 P.2d at 121; *Kornfield v. Kornfield*, 134 Idaho 383, 385, 3 P.3d 61, 63 (Ct.App.2000); *Rohr*, 126 Idaho at 3, 878 P.2d at 177. When such a discretionary decision is appealed, we examine whether the magistrate court correctly perceived the issue as one of discretion, acted within the boundaries of such discretion and consistently with applicable legal standards, and reached its decision by an exercise of reason. *Pace v. Pace*, 135 Idaho 749, 751, 24 P.3d 66, 68 (Ct.App.2001); *Kornfield*, 134 Idaho at 385, 3 P.3d at 63. An abuse of discretion will be found if the magistrate failed to give consideration to relevant factual circumstances, *Rohr v. Rohr*, 128 Idaho 137, 141, 911 P.2d 133, 137 (1996); *Yost v. Yost*, 112 Idaho 677, 680, 735 P.2d 988, 991 (1987), or if the magistrate's findings are not supported by the evidence, *Rohr*, 126 Idaho at 3, 878 P.2d at 177; *Biggers v. Biggers*, 103 Idaho 550, 555, 650 P.2d 692, 697 (1982).

We conclude that the magistrate's finding that Siegel has potential earnings of $99,000 per year is well supported by the evidence. According to Siegel's testimony, he had been working in the computer industry since 1979 in such capacities as software tester, director of quality, project manager, and consultant. After moving to Idaho, he continued to work as a consultant, often trav-

---

1. Section 6(c)(1) of the I.C.S.G. states in part:

(c) Potential Income. (1) Potential earned income. If a parent is voluntarily unemployed or underemployed, child support shall be based on gross potential income, except that potential income should not be included for a parent that is physically or mentally incapacitated. A parent shall not be deemed underemployed if gainfully employed on a full-time basis at the same or similar occupation in which he/she was employed for more than six months before the filing of the action or separation of the parties, which-

ever occurs first. Ordinarily, a parent shall not be deemed underemployed if the parent is caring for a child not more than 6 months of age. Determination of potential income shall be made according to any or all of the following methods, as appropriate:

(A) Determine employment potential and probable earnings level based on the parent's work history, occupational qualifications, and prevailing job opportunities and earnings levels in the community.

eling within and outside the state to secure and perform contracts. Siegel testified that he earned no income in 1997. This was due to his desire to change his profession and study at a university in California with the aim of becoming a psychologist. He said that in 1998 he took a leave of absence from his psychology program and reentered the computer industry to support his children. At that time he "took a job" with Siegel & Associates, Inc., which paid him a salary of $35,600 in 1998. Siegel testified that he expected to be paid $36,000 in 1999.

The magistrate properly rejected Siegel's contention that for purposes of calculating child support, his income should be measured by the salary he was earning at the time of the hearing. The evidence showed that his employer, Siegel & Associates, Inc., is a corporation in which the sole shareholder, director, and officer is Siegel's mother, Doris Siegel. The sole business of the corporation is Siegel's computer consulting service. In 1998, the corporation had gross earnings of $151,000 and expenses of $26,000 for travel and meal costs incurred by Siegel, leaving net earnings of $125,000 before deduction of salaries. Although Doris Siegel has no expertise in computers and provides no services to the corporation, it paid her a $26,000 "salary" in 1998. In addition to paying Siegel a 1998 salary of $35,600, the corporation paid $3,400 for his tuition expenses, and his employment contract provided that up to $7,500 in legal fees would be paid for Siegel's personal litigation expenses. The corporation also provided a 1997 Ford pickup for Siegel to use for both personal and business purposes, and the corporation owned a lot on which it was building a house for Siegel to reside in. On this evidence, the magistrate was justified in finding that Siegel & Associates, Inc., and Siegel's salary arrangement with the corporation, were nothing more than an artifice to create an appearance that his earnings were less than the income he actually generated through his consulting services.

Margairaz's evidence of Siegel's earning potential included the testimony of a licensed vocational rehabilitation professional. He testified that, based upon Siegel's expertise and experience, Siegel could earn a minimum of $100,000 as a consultant in Spokane or Seattle, Washington, or in San Francisco, California. The expert opined that to gain that income, Siegel would be required to work forty-hour weeks for only three and one-half months per year.

The magistrate's finding that Siegel had a potential earned income of at least $99,000 is consistent with the vocational rehabilitation specialist's testimony and is a sum that is less than the income actually received by Siegel & Associates, Inc. in 1998, which was derived solely from Siegel's labors. The magistrate's decision, imputing income that could be earned from only three and one-half months of work per year, also recognizes that as an independent contractor offering consulting services, Siegel can not expect constant and consistent work but will have periods of idleness.

■ Siegel argues that the magistrate's consideration of earnings Siegel could derive from work outside the immediate area of Sandpoint, Idaho, where he resides, was inconsistent with section 6(c)(1)(A) of the I.C.S.G., which specifies that the determination of potential income should be based on "the parent's work history, occupational qualifications, and prevailing job opportunities and earning levels *in the community*." (Emphasis added.) We do not agree that the magistrate's decision violates this rule. Rule 6(c)(1)(A) makes job opportunities and earning levels in the parent's community only one element for the trial court's consideration. The parent's work history and occupational qualifications are also factors, and they are the more significant factors in this case. Siegel had a well-established history of traveling extensively in order to carry on his occupation as a consultant in the computer software field. For example, his 1998 earnings through Siegel & Associates, Inc. were derived principally from a consulting contract with a company in Boise, Idaho, approximately 400 miles from Sandpoint. Contrary to Siegel's argument, the magistrate's determination of his potential income does not effectively require that he move away from Sandpoint in order to generate earnings at that level; it requires only that he continue his longstanding practice of periodically trav-

eling to obtain and carry out consulting contracts.

In arriving at the child support modification, the magistrate made findings that are supported by the evidence. She acted within the bounds of her discretion and consistent with applicable legal standards, and arrived at her decision by an exercise of reason. No abuse of discretion has been demonstrated.

### B. Attorney Fees

Margairaz has requested an award of attorney fees on appeal pursuant to I.C. § 12–121 on the ground that Siegel brought the appeal frivolously, unreasonably and without foundation. An appeal is frivolous and unreasonable if it does no more than invite an appellate court to second-guess the trial court's findings based on conflicting evidence. *Rowley v. Fuhrman*, 133 Idaho 105, 110, 982 P.2d 940, 945 (1999); *Sun Valley Shamrock Res., Inc. v. Travelers Leasing Corp.*, 118 Idaho 116, 120, 794 P.2d 1389, 1393 (1990); *Krebs v. Krebs*, 114 Idaho 571, 576, 759 P.2d 77, 82 (Ct.App.1988). Siegel's appeal has merely asked that we overturn factual findings of the magistrate that are plainly supported by substantial evidence. Therefore, attorney fees are awarded to Margairaz on appeal.

### CONCLUSION

The magistrate's order for modification of child support is affirmed. Costs and attorney fees on appeal are awarded to respondent.

Chief Judge PERRY and Judge GUTIERREZ concur.